UNITED STATES *v.* MONROE-GOLDKAMP Co. (No. 2789)[1]

---

[1] T. D. 42135.

United States Court of Customs Appeals, April 4, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *Hugo P. Geisler*, special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument December 14, 1926, by Mr. Igstaedter and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States has appealed from the judgment of the Board of United States General Appraisers (now United States Customs Court), which sustained the importer's protest against the demand and collection of $5, which, according to the contention of the Government, was collected as liquidated damages on account of appellee's failure to comply with the conditions of the "term entry bond" given at the port of St. Louis, Mo., to insure the production to the collector of customs of all documents, and the compliance with all the conditions required by paragraph 3, Title IV, of the Tariff Act of 1922, and all regulations made in pursuance thereof.

The merchandise, imported from Canada, consisted of raw furs exceeding $100 in value, and was shipped without consular invoice and consigned to a St. Louis firm. Neither the consignees, brokers, nor importers were able to produce any consular invoice either at the time of shipment or subsequently. The furs were subject to rapid deterioration, and, in order to secure immediate delivery, were entered on what purports to be a *pro forma* invoice made by the agent of the Dominion Express Co. at Langaburg, Canada, and under the "term entry bond" given by the importers and brokers in the sum of $10,000 as liquidated damages covering this and other entries, to be made within a period of one year.

. The bond is as follows:

TERM ENTRY BOND

Know all men by these presents, that Monroe-Goldkamp Company, a partner-ship composed of C. L. Monroe and Jos. L. Goldkamp, of city of St. Louis, State of Missouri, as principal, and Southern Surety Company, of State of Iowa, by M. P. Jackson, attorney in fact, of _____, as sureties are held and firmly bound unto the United States of America in the sum of ten thousand _____ dollars, as liquidated damages, except as hereinafter stipulated, for the payment of which we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

Witness our hands and seals this 1st day of October, 1923.

Whereas the said principal expects to enter certain imported articles at the port of St. Louis in the State of Missouri within a period of one year from October 1st, 1923, to and including Sept. 30, 1924, and desires delivery of all or part of the articles prior to ascertainment by customs officers of the quantity and value

thereof, and of the full amount of duties and charges due thereon and prior to the decision by the proper officer as to right of said articles to admission into the United States:

Now, therefore, the condition of this obligation is such that—

If the said obligors shall produce to the collector of customs all the documents, and shall perform all acts and comply with all the conditions required by part 3 of Title IV of the tariff act of 1922, and shall comply with the requirements of all other laws and regulations made in pursuance thereof relating to the importation and admission of said articles into the commerce of the United States, then this obligation shall be void; otherwise it shall remain in full force and effect *to the extent and in such amounts as liquidated damages as may be demanded by the collector in accordance with law and regulations* not exceeding the penal sum of this obligation, *for any breach or breaches thereof.*　(Italics ours.)

Monroe-Goldkamp Company,

By C. L. Monroe.

Southern Surety Company,

By M. P. Jackson, *Attorney in fact.*

The merchandise arrived on railroad car at St. Louis on November 20, 1923, and consisted of one sack of raw furs valued at \$148.20 and entered at the value of \$148.

When it became apparent that the consular invoice could not be produced as per the conditions in said bond, importers, on May 23, 1924, filed with the collector of customs at the port of St. Louis a sworn petition in which they set forth the giving of said bond, and the reasons why the consular invoice could not be produced, and requested that "the bond given for the production of the consular invoice be canceled, and the entry liquidated free of duty, as the examination and return of the appraiser show the furs to be unconditionally free." The request for the cancellation of the bond was approved May 29, 1924, upon the payment of \$5. The approval of the application is noted on the same by William J. McBurney, assistant collector. There appears also on the application, in red ink, the words "Liquidated damages, \$5. J. T. A." "J. T. A." is shown to be the initials of a Mr. Austin who was the clerk in charge of bonds at the customhouse. The consumption entry sheet bears the following notations:

Bond given to produce certified invoice.　Bond Cat. No. 7553.

Customs District No. 45, Port of St. Louis.　Entered Nov. 28, 1923.　Cashier Liquidated Feb. 25, 1924 as entered.

Prod. of Consular Inv. waived and \$5.00 Liq'd. Damages paid 5/29/24.

The pertinent parts of sections 482, 484, and 486 of the Tariff Act of 1922 are as follows:

Sec. 482. (a) Every invoice covering merchandise exceeding \$100 in value shall, at or before the time of the shipment of the merchandise, or as soon thereafter as the conditions will permit, be produced for certification to the consular officer of the United States.　＊　＊　＊

(b) Such invoices shall have indorsed thereon, when so produced, a verified declaration, in a form prescribed by the Secretary of the Treasury, stating

whether the merchandise is sold or agreed to be sold, or whether it is shipped otherwise than in pursuance of a purchase or an agreement to purchase, that there is no other invoice differing from the invoice so produced, and that all the statements contained in such invoice and in such declaration are true and correct. * * *

Sec. 484. Entry.—(a) Except as provided in sections 490, 498, 552, and 553 and in subsection (d) of section 315 of this act, the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse within forty-eight hours, exclusive of Sundays and holidays, after the entry of the importing vessel or report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time.

(b) No merchandise shall be admitted to entry under the provisions of this section without the production of a certified invoice therefor, except that entry may be permitted if — * * *

(3) Such person gives a bond in a penal sum to be fixed by the Secretary of the Treasury for the production of such certified invoice within six months, *and the payment of the penal sum so fixed as liquidated damages in the event such invoice is not so produced.* * * * (Italics ours.)

Sec. 486. Bond.—Upon entry of any merchandise, none of which or a part only of which is sent to the public stores for inspection, examination, or appraisal the consignee shall give a bond, conditioned that he will produce all invoices, declarations, and other documents or papers required by law or regulations made in pursuance thereof upon the entry of imported merchandise; and that he will comply with all the requirements of the laws or regulations made in pursuance thereof relating to the importation and admission of such merchandise and will return to the collector, when demanded by such collector, not later than ten days after the appraiser's report, such of the merchandise as was not sent to the public stores, and also will return to the collector, on demand by him, any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States. Such bond shall be given in a form and in a penalty to be prescribed by the Secretary of the Treasury, the penalty thereof to be paid as liquidated damages: *Provided*, That instead of a bond upon each entry the Secretary of the Treasury may prescribe a bond to be taken from any consignee to cover all importations entered by him within a period of one year from the date thereof.

It is the contention of the importers that the $5 charged, which was paid under protest, is a fine, and that there is no statutory authority for the collector or anyone else to collect a fine under any such circumstances; that the only breach of the bond was the failure to produce the certified invoice, and that the waiver of the provisions carried with it the waiver of the penalty.

The Government insists that the amount mentioned in the bond is liquidated damages, and that upon a breach of the same the whole sum could have been collected; that if the whole amount could be collected, any part of the same might also be exacted; that the extra work involved created by the failure to furnish the invoice in the taking of the bond was an element of damage, and that such amount as was exacted was liquidated damages and not a fee, fine,

penalty, or charge; that the said sum of $5 was collected in pursuance to a regulation of the Secretary of the Treasury which has the force of law, and which regulation prescribed that it should be collected as "liquidated damages."·

Article 1122 of the Customs Regulations of 1923 reads as follows:

ART. 1122. *Cancellation of bonds to produce documents.*—Collectors of customs,· in treating bonds for the production of missing documents as satisfied, will demand and collect a sum of $5 for each missing invoice not produced within six months, and a like amount for each missing declaration of the owner or ultimate consignee or other ·document not produced within 90 days from the date of entry. * * * *Such sums as shall be collected on bonds as liquidated damages* will be deposited as miscellaneous receipts. (Italics ours.)

It will be noticed that section 486 applies to the entry of merchandise, "none of which·or a part only of which is sent to the public stores for inspection, examination, or appraisal," and that the bond is not only conditioned that the entrant will produce all invoices but declarations and other documents as well, and do other things specified in the section. It will be further noted that section 486 in the proviso is made to cover entries within the "period of one year."

Article 1122 of Customs Regulations of 1923, above quoted, probably applies to bonds taken under both sections 484 and 486. Since the bond purports to be a term-entry bond and substantially follows the language of section 486, we conclude that the bond was taken under the authority of section 486. It is suggested by the Government that it was taken under the authority of both sections. It is hardly likely that it was taken under the authority of section 484 since there is no provision in that section for what is by the Treasury Department denominated as a term entry. Section 484 unlike section 486 may apply to an entry which in its entirety is sent to the public stores.

Furthermore, a reference to article 272 of Customs Regulations, 1923, discloses the same to be an exact copy of the first provisions of section 486, with the additional statement that said bond shall be given on Customs Form 7551 or No. 7553. An examination of the bond given in this case discloses that the form is numbered 7553.

The Tariff Act of 1922, section 623, provides as follows:

SEC. 623. GENERAL REGULATIONS.—In addition to the specific powers conferred by this act, the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this act.

The Government urges that this provision of the law enables the Secretary of the Treasury to cancel the bond upon the payment, as liquidated damages, of a sum fixed by him, and that that sum having been fixed by him at $5 is as if it were in the statute and has the same force and effect as a legislative enactment. It is further urged that if this interpretation is not given to the language

used in vesting authority in the Secretary of the Treasury, the result is to be the nullification of the whole attempt of Congress to provide for the admission to entry of imported merchandise without invoice.

We think Congress has authorized the Secretary of the Treasury to adopt rules and regulations touching a number of things concerned with the *taking* of the bond, but we do not find any authority in the statute authorizing the Secretary to promulgate regulations concerning the payment of a certain sum, less than the full amount, as a condition precedent to cancellation.

The provisions of section 623 do not expressly or by reasonable interpretation of the words used, authorize the application of that portion of article 1122 of Customs Regulations here called into question.

As far as we have been able to observe after a brief examination of prior tariff acts, sections 484 and 486 of the tariff act of 1922 are in some respects new legislation. The tariff act of 1913 had no provision similar to the "liquidated damages" provision in the above section of the tariff act of 1922. The act of June 10, 1890, provided in section 4, 26 Stat. 131, 132, for the exaction of a bond for the production of a duly certified invoice. Neither the 1890 statute nor the regulations adopted under it had any "liquidated damages" provision.

In the case of *United States* v. *Outajar et al.*, 59 Fed. 1000, affirmed, 67 Fed. 530, the court held, upon an action being brought upon the bond demanding the full amount of the same, that the Government was not entitled to the full amount, for the reason that the bond did not provide that the amount mentioned therein should be regarded as liquidated damages and was in fact a penalty, and held that the Government was only entitled to recover such damages as it had actually sustained.

It may be argued with considerable plausibility that Congress, in the Tariff Act of 1922, having in mind the former statutory provisions and the rulings of the courts thereon, intended that the whole sum provided for in the bond in its entirety should be due the Government upon a default of the same. Much could be said about the harshness of a law or the construction of the same which would result in the unconscionable exaction of $10,000 for the failure to produce an invoice in connection with an entry of free goods valued at only $148. This phase of the situation, however, as we understand it, is not before us and we are content to leave this phase of the matter with the legislative branch of our Government. The question which directly confronts the court is, Has the collector the right to exact and take, either as liquidated damages, fees, charges, or a fine, any sum less than the full amount provided for in the bond? We know of no

provision of statute authorizing the exaction of a fine or fee or charge in connection with the failure to produce an invoice. It is not urged that the penalty or the forfeit provided for in the bond has been demanded or collected. On the contrary, it is conceded that the bond has been *canceled* and the production of the consular invoice waived.

Under the issues in this case we do not feel that we are called upon to determine if anyone has or has not the authority to cancel a bond such as is before us, and we do not pass upon that question.

The action of the collector in demanding and accepting the sum of $5 can not be said to be a compromise of an indebtedness due the Government, since a compromise involves the meeting of the minds of the parties and an agreement on the terms of the same. Here the importers have not agreed to the exaction but have vigorously protested the making of a payment which they claim they were required to make. See sections 616 and 617, Tariff Act of 1922.

It is contended that the goods for which the invoice should have been produced were free of duty, and that no damages within the contemplation of law could arise from the failure to produce the invoice. No one has taken the position in this case, however, that an invoice is not required for goods admitted free of duty. See T. D. 10580. No legal justification for the $5 exaction has been pointed out to us, and we know of no statutory authority for the same.

The judgment of the Board of United States General Appraisers (now United States Customs Court) sustaining the protest is *affirmed*.