UNITED STATES *v.* FRANK F. SMITH & CO. (No. 4087)[1]

[1] T. D. 49267.

United States Court of Customs and Patent Appeals, November 1, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General. and *Joseph F. Donohue*, special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument October 11, 1937, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported several shipments of fish at the subport of Gloucester, Mass., under the Tariff Act of 1930. Not having the invoices at the time of entry, the importer gave the customary bond required by section 484 of said tariff act, that he would produce said invoices within six months from the time of importation.

The relevant portions of said section 484 are as follows:

SEC. 484 (b). PRODUCTION OF CERTIFIED INVOICE.—No merchandise shall be admitted to entry under the provisions of this section without the production of a certified invoice therefor, except that entry may be permitted if—

    \*       \*       \*       \*       \*       \*       \*

(3) Such person gives a bond for the production of such certified invoice within six months.

Thereafter, the invoices not having been furnished, the Collector of Customs, purporting to act under the authority of section 623 of said tariff act, and article 1256 (a) of the Customs Regulations of 1931, required the importer to pay the sum of $50, representing a penalty of $10 for each missing invoice. The exaction was paid under protest. The reasons given for protesting were stated to be that the protestant "feel it is unjust and unfair to assess this fine." Prior to the collection aforesaid of $50, the protestant had applied to the Treasury Department for "an extension of time on their bonds," but the application was denied by the Department.

A hearing was had before the United States Customs Court, Third Division, and a decision rendered as of October 10, 1935. In the collector's letter, with the papers in the case, the timeliness of the protest was raised in these words:

The entries covered by the inclosed protest have been liquidated on the dates specified herein. The fines imposed were paid by the importers on July 23, 1934. The question is therefore submitted to the Court whether or not the protest is timely. The inclosed protest was filed on August 21, 1934.

The Customs Court held that the sums demanded by the collector in this case were in the nature of exactions; that the protest was properly filed within sixty days after the decision of the collector as to the exaction, and held further, upon the authority of *United States* v. *Monroe-Goldkamp Co.*, 15 Ct. Cust. Appls. 26, T. D. 42135, that there was "no legal justification for the exaction of the fines in question."

A rehearing of the cause was requested by the Government and granted, and thereafter a rehearing was had, and, as a result thereof, the protest was again sustained. The rehearing was granted by the court on the representation by the Government that the law on the subject had been changed, and that the *Monroe-Goldkamp Co.* case, *supra*, was no longer decisive of the matter.

The Government has appealed from the judgment of the United States Customs Court, and urges here that the court was in error in holding that the amount exacted on the bond of the appellee was illegally exacted, but insists that it was fully within the letter and spirit of the law, as it existed at the time of these importations.

The case of *United States* v. *Monroe-Goldkamp Co.*, *supra*, was decided under the Tariff Act of 1922. In that case, raw furs were imported from Canada, were not dutiable, and were entered on a *pro forma* invoice under the terms of a bond given by the importers and brokers in the sum of $10,000, as liquidated damages covering this and other entries. When it became apparent that the consular invoice could not be produced as per the conditions of the bond, the importers filed a petition with the Collector of Customs for the cancelation of said bond, which was approved by the collector upon the payment of $5, which the clerk in charge of bonds at the custom-

house indicated as "Liquidated damages." At that time the pertinent provisions of the Tariff Act of 1922 were sections 484 and 486. Section 484 provided that entry of merchandise might not be made without the production of a certified invoice therefor, except that it might be admitted if—

Such person gives a bond in a penal sum to be fixed by the Secretary of the Treasury for the production of such certified invoice within six months, and the payment of the penal sum so fixed as liquidated damages in the event such invoice is not so produced.

Section 486 provided, as to the character of said bond:

Such bond shall be given in a form and in a penalty to be prescribed by the Secretary of the Treasury, the penalty thereof to be paid as liquidated damages * * *.

It was contended in that case by the importer that the $5 penalty which was collected and paid under protest was a fine, and that there was no statutory authority for the collector or anyone else to collect a fine under any such circumstances; that the only breach of the bond was the failure to produce the certified invoice, and that the waiver of the provisions carried with it the waiver of the penalty. This court held, in part, as follows:

We think Congress has authorized the Secretary of the Treasury to adopt rules and regulations touching a number of things concerned with the *taking* of the bond, but we do not find any authority in the statute authorizing the Secretary to promulgate regulations concerning the payment of a certain sum, less than the full amount, as a condition precedent to cancellation.

Upon the theory that there was no legal authority for the exaction of the sum of $5, this court held that the protest of the importer should have been sustained.

The statutes and regulations which were applicable in the *Monroe-Goldkamp Co.* case, *supra*, were changed by the Tariff Act of 1930. Section 623 of said act is as follows:

SEC. 623. SECURITY.

(a) BONDS.—In any case in which bond or other security is not specifically required by law, the Secretary of the Treasury may by regulations require, or authorize collectors of customs to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue and to assure compliance with the customs laws and regulations. Except as otherwise specifically provided by law, whenever a bond is required by law or regulations, the Secretary of the Treasury may by regulations prescribe the conditions and form of such bond, provide for the approval of the sureties thereon (without regard to any general provision of law), fix the amount or penalty thereof, whether for the payment of liquidated damages or of a penal sum, and authorize the cancellation of any such bond, in the event of a breach of any condition thereof, upon the payment of such lesser amount as he may deem sufficient. No condition in any such bond shall be held invalid on the ground that such condition is not specified in the law authorizing or requiring the taking of such bond. Whenever a bond is required by the customs laws or regulations, the Secretary of the Treasury may authorize the execution of a single bond the conditions of which shall extend to

and cover similar cases or importations over a period of time, not to exceed one year, or such longer period as the Secretary of the Treasury may fix to meet the circumstances of any particular case.

Under and by virtue of said Tariff Act of 1930, the following customs regulation was adopted:

Art. 1256. Nonproduction of documents—Failure to redeliver packages—Penalties and deposit of.—(a) Collectors of customs, in treating bonds for the production of missing documents as satisfied, will demand and collect a sum of $10 for each missing invoice not produced within six months, and a like amount for each missing declaration of the owner or ultimate consignee or other document not produced within the time prescribed by the regulations, or any lawful extension thereof.

(b) An amount equal to the invoice value plus the duty will be collected for failure to return to the collector on demand packages subject to redelivery.

(c) Such sums as shall be collected on bonds as liquidated damages will be deposited as miscellaneous receipts.

The trial court, upon these changes of the law and regulations being brought to its attention, was of the opinion that the administrative officials had adopted a mistaken view of the authority contained in said section 623, and stated:

* * * No law can be upheld which will arbitrarily take an importer's money from him without giving him his day in court. There must be available to him a proceeding conformable to due process of law. The limit of authority in this respect granted by this section is that upon application for relief the Secretary may authorize the liquidation at a lesser amount than the penalty if and when the same shall have been acceptable to the importer, but not otherwise.

Furthermore, the trial court said:

* * * If the Secretary can make a regulation or issue an individual order to the collector directing the collection of such amount without application from the importer and over his protest, it would amount, it seems to us, to the taking of his property without due process of law. Inasmuch as the regulation (article 1256, supra) makes no provision for an application by the importer for relief nor any provision for a hearing on the question as to whether said importer is in default, the regulation to that extent is in violation of law.

Relative to the suggestion that the importer is deprived of his day in court by the terms of article 1256, supra, it becomes pertinent to inquire how he gained a hearing, not only in the trial court, but in this court as well. The particular kind of hearing and day in court which is secured to a litigant in customs matters is one entirely regulated by the statute. If, for instance, the invoices have been furnished as are provided by the letter of the bond, or, if the bond has not been furnished or signed, or given, all such matters may be shown and heard on protest against the collector's exactions. Here the importer has been deprived of none of these rights. He has only urged what is, in fact, not a defense, but solely that he thought the imposition of the penalty was unjust.

Whether the penalty was unjust or just is not a matter for our consideration. That is a legislative matter. The law-making body has

authorized the Secretary of the Treasury and the collectors of customs to take these bonds, to require the giving of the same, and to authorize the cancellation of the same in the event of a breach of any condition thereof, upon the payment of such lesser amount as he may deem sufficient. We can see no good reason why the administration of these matters should not be within the control of the administrative officers within the limits fixed by the legislative authority. Nor do we know any reason why, nor have any authorities been cited to the effect that, within the legislative limits, these powers may not be exercised properly by administrative officers. *Thomas & Pierson, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 56, T. D. 49042.

The judgment of the United States Customs Court, Third Division, is *reversed*.